# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TERRANCE J. SHAW,

                Plaintiff,

v.

PAUL S. KEMPER, LAURA FRAZIER, and MICHELLE BONES,

                Defendants.

Case No. 21-CV-335-JPS

**ORDER**

      Plaintiff Terrance J. Shaw, who was an inmate at Racine Correctional Institution ("RCI") at the time that he filed his complaint, filed this pro se action under 42 U.S.C. § 1983 alleging that various defendants at RCI violated his constitutional rights. ECF No. 1.[1] Plaintiff has paid the $402 filing fee, but the Court must still screen the complaint. 28 U.S.C. § 1915A ("The Court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."). Plaintiff has also filed a motion to appoint counsel and a motion for a protective order. ECF. No. 8. For the reasons explained below, the Court will deny Plaintiff's motion to appoint counsel and grant the motion for a protective order to the extent that the protective order seeks to restrict access to Plaintiff's medical records. The Court will also permit Plaintiff to proceed on a claim against Laura Frazier ("Frazier") for

---

[1] Although Plaintiff has since been released from custody, courts "look to the status of the plaintiff at the time he brings his suit" to determine whether the Prison Litigation Reform Act ("PLRA") applies. *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004).

deliberate indifference to a serious medical need under the Eighth Amendment.

1. SCREENING THE COMPLAINT

   1.1 Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799

F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 1.2    Plaintiff's Allegations

The facts in this case surround Plaintiff's housing while at RCI. Plaintiff is an elderly, wheelchair-bound veteran. While incarcerated at RCI, Plaintiff made diligent use of the inmate complaint process, which prisoners must exhaust in order to proceed on their claims in federal court. *See* 42 U.S.C. § 1997e(a). In this case, Plaintiff sought a wet cell (i.e., a cell with a toilet) that was large enough to accommodate his wheelchair.

On March 27, 2018, Plaintiff went to RCI's Health Services Unit ("HSU") where a nurse practitioner evaluated him and determined that he should be housed in a single-occupancy, wheelchair-accessible wet cell. The next day, a physician named Dr. Chen evaluated Plaintiff and came to the same conclusion as the nurse practitioner. However, sometime in April 2018, Dr. Chen informed Plaintiff that HSU staff told Dr. Chen that he should no longer give his medical opinion regarding Plaintiff's need for a single-occupancy, wheelchair-accessible wet cell. It is not clear, in the interim, where RCI housed Plaintiff.

Thus, on April 20, 2018, Plaintiff drafted an inmate complaint in which he presumably[2] complained that HSU staff intervened in his quest for medically appropriate housing. Five days later, inmate complaint

---

[2]The federal complaint does not clearly say what Plaintiff wrote in his Inmate Complaint. *See* ECF No. 1 ¶ 5.

examiner Michelle Bones ("ICE Bones") filed a response in which she told Plaintiff to raise his issue with either Assistant HSU Manager Frazier or HSU Manager Vasquez. *Id.* ¶ 8. Bones told Plaintiff that if the issue could not be resolved internally, then he could re-file his inmate complaint in ten days. Plaintiff wasted no time in contacting Frazier, to whom he wrote that same day.

On April 30, 2018, Frazier responded to Plaintiff. She told him that his records disputed his contention that he needed a single-occupancy wet cell. Specifically, she noted that housing unit records from less than a week earlier indicated that Plaintiff could stand and walk around his cell without difficulty. Plaintiff found it wholly inappropriate that Frazier relied on housing unit records rather than medical records to make a determination about his housing.

On May 1, 2018, Plaintiff wrote back to Frazier. He disputed the characterization of his walking and weight-bearing abilities, described the intense nature of his pain, and chastised her for relying on non-medical opinions. On May 3, 2018, Plaintiff wrote an addendum in which he explained that he has a permanent wheelchair because he is unable to walk. He described incidents in which people took his wheelchair, leaving him stranded in the shower, and noted that if he could walk, he would not have been stranded. Sometime in mid-May, Plaintiff filed a formal inmate complaint, which, on May 18, 2018, ICE Bones rejected "for being previously addressed." *Id.* ¶ 21. It is not clear what this earlier resolution was, or whether, by this date, he had been moved to a wet cell. (Case No. 21-CV-303 indicates that on May 18, 2018, RCI moved Plaintiff to his requested housing, thus explaining ICE Bones's rejection of the complaint.) Nevertheless, Plaintiff found the rejection inappropriate because ICE Bones

did not make any attempt to identify who tried to impede Shaw's housing placement.

### 1.3 Analysis

Plaintiff seeks to proceed on an Eighth Amendment claim for deliberate indifference to his serious medical needs against Frazier. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' – i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)). At the pleading stage, "knowledge and intent may be pleaded generally (which is to say, in a conclusory fashion), the lack of detail does not permit dismissal." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).

Plaintiff alleges that Frazier acted with deliberate indifference to a serious medical need when she decided to credit the observation of non-medical housing staff over the recommendations of two medical professionals—a nurse practitioner and a doctor—in order to deny Plaintiff medically appropriate housing. Plaintiff has adequately alleged that his medical need was sufficiently serious; his complaint describes his physical limitations and explains that his doctor and nurse each determined that he should have access to a single-occupancy, wheelchair-accessible wet cell. Additionally, Plaintiff has adequately alleged that Frazier knew that medical staff made these recommendations and elected to ignore them,

thereby ignoring a potentially serious risk to Plaintiff should he stay in general population. Whether Frazier's conduct was merely negligent—which the Constitution does not protect against—is a question for the fact-finding stage of the case. At this juncture, Plaintiff has sufficiently stated a claim under the Eighth Amendment for deliberate indifference against Frazier.

Plaintiff's allegations as to the warden, Paul Kemper ("Kemper") must be dismissed. It is well settled that "[o]nly persons who cause or participate in the violations are responsible" for the constitutional rights violations. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Plaintiff has not alleged that Kemper had any role in his medical assessment or housing placement. Thus, the claim against him will be dismissed.

The claim against ICE Bones must also be dismissed. "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *Id.* In *George*, the Seventh Circuit explained that "[a] guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *Id.* at 609–10. Certainly, "[o]ne can imagine a complaint examiner doing her appointed tasks with deliberate indifference to the risks imposed on prisoners. If, for example, a complaint examiner routinely sent each grievance to the shredder without reading it." *Raemisch*, 555 F.3d at 595. Such conduct could theoretically give rise to constitutional liability. *Id.* But complaint examiners may not be held responsible for the constitutional failings of their coworkers. *Id.* at 596.

In this case, Plaintiff is frustrated that ICE Bones rejected his complaint "for being previously addressed," ECF No. 1 ¶ 17, and alleges that she failed to investigate the ostensible collusion in HSU to deny

Page 6 of 16
Case 2:21-cv-00335-JPS   Filed 05/17/22   Page 6 of 16   Document 10

Plaintiff medically appropriate housing. However, ICE Bones did not ignore Plaintiff's complaint—she told him to attempt to sort it out internally and gave him ten additional days to re-submit his complaint. Then, when Plaintiff finally resubmitted a complaint (it is not clear if he did so within the ten-day period), ICE Bones responded on May 18, 2018 to note that the issue had already been addressed. Based on Plaintiff's other cases before this Court, it appears that, on May 18, 2018, RCI placed Plaintiff in a single-occupancy, wheelchair-accessible wet cell in Green Unit. *See* Case No. 21-CV-303. Therefore, ICE Bones acted reasonably in rejecting the complaint. She did not ignore him, she did not make any decisions about his housing, and her rejection of the complaint was apparently based on a belief that the issue had been resolved. This does not give rise to a constitutional violation.

### 2. MOTION TO APPOINT COUNSEL

As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of a plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When a court recruits a lawyer to represent a pro se party, the

lawyer takes the case pro bono. Unlike a lawyer appointed to represent a criminal defendant during his prosecution, who is paid by the government for his work, an attorney who takes a prisoner's civil case pro bono has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice in the District. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Although the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful § 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for pro bono appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent pro se plaintiffs on appeal. *See, e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the pro se appellant); *McCaa*, 893 F.3d at 1029 (same).

Finally, it must be remembered that, when a court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes

Congress's instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are a court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, a court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district court judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, No. 09-cv-90-bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has

contacted do not, he should reach out to others before he concludes that no one will help him.

In this case, Plaintiff has attached emails from several attorneys in the Wisconsin area with civil rights practice, which demonstrate a good faith effort to secure appropriate counsel in this matter. *See* ECF No. 9-1 at 1–6. The Court is satisfied that he has accomplished the first step of the *Pruitt* analysis.

But Plaintiff's request must also succeed on the second *Pruitt* question: whether the difficulty of the case exceeds his capacity to coherently present it. This assessment must be made in light of the particular capabilities and circumstances presented by each pro se litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While a court need not address every concern raised in a motion for appointment of counsel, it must address "those that bear directly" on the individual's capacity to litigate his case. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must be done against the backdrop that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d at 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of § 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Several pronouncements from the Court of Appeals appear to be in tension with this principle. First, the Seventh Circuit notes that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation." *James*, 889 F.3d at 327. It deems the "[a]dvanced phases" to include those from discovery onward. *Id.*; *McCaa*, 893 F.3d at 1032. But nearly every prisoner case proceeds to discovery, as the district court applies exceedingly lenient review during initial screening.

Second, the Seventh Circuit instructs that district courts should evaluate a prisoner's competency irrespective of the involvement of a "jailhouse lawyer." *McCaa*, 893 F.3d at 1033; *Walker v. Price*, No. 17-1345, 2018 WL 3967298, at *5 (7th Cir. Aug. 20, 2018). How courts should do this is not clear. A court rarely knows whether a filing was prepared by the plaintiff or someone helping him. And if a court does know that the plaintiff

is receiving help, how can it assess his ability to litigate without knowing which portions of the filings are his work, and which come from the jailhouse lawyer? In *Walker*, the court determined that the inmate's work product decreased in quality after his jailhouse lawyer was transferred to another prison. 2018 WL 3967298, at *6. Yet a savvy prisoner, looking to secure counsel for himself, could do this on purpose, crafting his filings to downplay his own litigation capabilities. A court would have no way to assess whether the inmate is sandbagging it.

Finally, the Court of Appeals indicates that claims involving the state of mind of the defendant, such as those involving deliberate indifference, are particularly complex. *James*, 889 F.3d at 327–28; *McCaa*, 893 F.3d at 1032. Yet a government official's culpable mental state is the foundation for most constitutional claims. Indeed, it is often the defining characteristic that sets § 1983 claims apart from their state-law tort analogues. Deliberate indifference is essential to nearly all claims of cruel and unusual punishment, excessive force, mistreatment of medical needs, and First Amendment and due process violations. *See Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) ("*[N]egligently* inflicted harm does not amount to a constitutional violation.") (emphasis in original). Taken together, these claims comprise the vast majority of prisoner litigation in this District. If state-of-mind issues are generally beyond the ability of most pro se litigants to prove, then a court likely would need to appoint counsel in nearly every prisoner case. This is plainly impossible.

The guiding rule has always been that appointment of counsel is the exception rather than the rule in pro se prisoner litigation. Yet a confluence of all-too-common circumstances—discovery, jailhouse lawyers, and claims concerning state of mind—militate in favor of the appointment of counsel. As the list of reasons to appoint counsel grows, the reasons not to do so shrink. This District's resources have not kept pace.

Against this backdrop, the Court finds that Plaintiff has not presented sufficient evidence and argument showing that he cannot litigate or try this matter competently on his own. Plaintiff explains that he is 73 years old, and the Veteran's Administration recently diagnosed him with a "mild cognitive impairment." ECF No. 9-1 at 7. This fact certainly weighs in favor of appointing counsel. But there are also facts weighing against it. First, Plaintiff is a prodigious (and occasionally successful) litigant, who has a better-than-average grasp on both procedural rules and substantive law when compared to most pro se litigants, notwithstanding his mild cognitive impairment. Second, Plaintiff is no longer in custody, so his ability to access public law libraries and legal clinics, and to spend his time and resources litigating his cases, is unrestrained by prison policies. Finally, this matter is currently at the pleadings stage, which is less complex than discovery, motion practice, and trial. At this juncture, in this particular matter, the Court finds that appointment of counsel is not appropriate. This may change depending on the case's progression and any changes in Plaintiff's cognitive abilities. The Court additionally notes that Plaintiff has secured counsel in one of his appeals, which is currently pending before the Seventh Circuit. *See Shaw v. Kemper*, No. 21-3265 (7th Cir. 2021). It may be worthwhile for Plaintiff to explore whether this attorney could offer assistance or otherwise refer counsel.

### 3. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** An Eighth Amendment claim against Frazier for deliberate indifference to a serious medical need.

The Court will deny Plaintiff's request for counsel. The Court also notes that Plaintiff's motion to appoint counsel includes a request for a protective order, though the substance of the motion is focused on the motion to appoint counsel. To the extent that Plaintiff's motion for a protective order seeks to protect the medical documents appended to his motion to appoint counsel, the Court will grant the request and order the Clerk of Court to restrict access to the documents found at ECF No. 9-1.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Accordingly,

**IT IS ORDERED** that Defendants Paul S. Kemper and Michelle Bones be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendant Laura Frazier;

**IT IS FURTHER ORDERED** that under the informal service agreement, Defendant Laura Frazier shall file a responsive pleading to the complaint within 60 days;

**IT IS FURTHER ORDERED** that Defendant raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service or this affirmative defense is waived;

**IT IS ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 8, be and the same is hereby **DENIED**; however, to the extent Plaintiff seeks to restrict access to his medical records, that request is **GRANTED**; the Clerk of Court is ordered to restrict access to ECF No. 9-1 to protect Plaintiff's medical records; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 17th day of May, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.